**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MOONEY AIRCRAFT, INC., Respondent.**

**No. 19448.**

United States Court of Appeals
Fifth Circuit.

Sept. 30, 1966.

---

**810**

Melvin J. Welles, Paul Elkind, Robert B. Schwartz, Attys., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, NLRB, Washington, D. C., for petitioner.

Hal Rachal, Midland, Tex., for respondent.

Before WISDOM and THORNBERRY, Circuit Judges, and COX,* District Judge.

WISDOM, Circuit Judge:

We hope that this opinion proves to be the epilogue and not just another episode in the series of controversies between Mooney Aircraft Company and the National Labor Relations Board.

In April 1960 Lodge 725, International Association of Machinists, AFL–CIO, began a strike to force Mooney's recognition of the Union as the exclusive bargaining representative of the production and maintenance employees. By July the Union and Mooney Aircraft had negotiated an agreement. July 9 the Union requested that all of the strikers be reinstated. July 18 the Company reinstated the striking employees, but permitted them to work only a 32-hour week rather than the 40-hour week which had been customary before the strike. The Board found this to be an unfair labor practice and ordered Mooney Aircraft not only to cease and desist, but also to:

> Make these strikers whole for any loss of pay they may have suffered by reason of the belated and incomplete reinstatement * * * 1961, 132 N.L.R.B. 1194, 1195.

This Court enforced that order. NLRB v. Mooney Aircraft, Inc., 1962, 310 F.2d 565.

In March 1963 the Board served backpay specifications on the respondent. After a hearing before a Trial Examiner, the Board issued its supplemental decision and order, requiring the respondent to pay a total of $10,739.56 in backpay awards. 1964, 148 N.L.R.B. 1057. The case is here on the Board's motion for a decree enforcing that supplemental order.

Mooney Aircraft makes four objections to the supplemental order: (1) The Board failed to permit the Company to set off against the backpay awards certain amounts due it on personal obligations of various employees. (2) The Board awarded full backpay to employees who were offered reinstatement before the rest of the strikers but who refused to return to work until the rest had been reinstated, and the Board ordered backpay to be paid for periods when certain other strikers were unavailable for work. (3) General Counsel failed to negative the possibility that absences of certain

* William Harold Cox, United States District Judge for the Southern District of Mississippi, sitting by designation.

employees were for their own purposes and not a result of the Company's unfair labor practices. (4) General Counsel has the burden of establishing the strikers' interim earnings; and in the absence of proof of interim earnings, no award may be made.

We find all of the respondent's arguments unpersuasive, and enforce the Board's order in full.

### I.

■■ Mooney Aircraft asserts that many of the employees to whom the Board has awarded backpay are indebted to the Company either for goods sold the employees or for money lent them. It seeks to set off these debts against the backpay awards.

A backpay proceeding is not the place to assert such claims. As this Court and other courts have repeatedly pointed out, a backpay proceeding is designed to enforce a public, not a private right. Agwilines, Inc. v. NLRB, 5 Cir. 1936, 87 F.2d 146, 150. "[T]he purpose of these backpay awards is to deter unfair labor practices and not to enforce the private rights of the employees." Nabors v. NLRB, 5 Cir. 1963, 323 F.2d 686, 691, cert. denied, 1964, 376 U.S. 911, 84 S.Ct. 666, 11 L.Ed.2d 609. Thus employees may not waive backpay claims, nor may they settle them with the employer. Nabors v. NLRB, supra; Waterman S.S. Corp. v. NLRB, 5 Cir. 1941, 119 F.2d 760. Creditors may not attach, NLRB v. Sunshine Mining Co., 9 Cir. 1942, 125 F.2d 757, nor garnish, NLRB v. Schertzer, 2 Cir. 1966, 360 F.2d 152, such awards. Any private debts the employees owe the Company are irrelevant to these backpay proceedings. To allow such setoffs in these proceedings would be to enmesh the Board in the crossfire of purely private controversies, creating an unwieldy if not unmanageable situation for the agency.

The respondent relies upon Klotz v. Ippolito, S.D.Tex.1941, 40 F.Supp. 422, to support the assertion in its brief that "Insofar as an adjudication of backpay is concerned, the NLRB, through its Trial Examiner, is acting as a Court of Law, and therefore, the same defenses, offsets and counterclaims should be available to Respondent as would be the case in a Court of Law." That case, however, was a suit by *an employee* under section 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) to enforce the *private* rights created by section 7 of the Act, 29 U.S.C. § 207. The employer was permitted to set off a private debt. But even under the Fair Labor Standards Act, the employee loses his private rights in the suit when he requests the Secretary of Labor to bring the action under section 16(c), 29 U.S.C. § 216(c). See Wirtz v. C & P Shoe Corp., 5 Cir., 1964, 336 F.2d 21, 30; cf. Mitchell v. Stewart Bros. Constr. Co., D.Neb.1960, 184 F. Supp. 886, 898. The employer may not counterclaim against the Secretary. Mitchell v. Richey, W.D.S.C.1958, 164 F. Supp. 419; Mitchell v. Floyd Pappin & Son, Inc., D.Mont.1954, 122 F.Supp. 755, 757–758.

Of course the Company in this case may seek any remedy available to it in the state courts of Texas.

### II.

■ The respondent next contests the award of backpay to two groups of strikers who allegedly did not return to work when they were offered reinstatement. July 9, 1960, the Union applied on behalf of all the strikers for reinstatement. The Company, however, demanded that the strikers make individual applications for reinstatement. Most of the strikers did so July 11, 1960. July 13 and 14, the Company offered immediate reinstatement as of July 14 to the three employee members of the negotiating committee which had unsuccessfully sought reinstatement for all of the striking employees. They refused this offer and returned to work along with all but five of the rest of the strikers July 18, 1960. Thereafter, at various dates, the five remaining strikers applied for reinstatement and were reinstated. The Company's obligation to reinstate all strikers as of July 11, 1960, the next working day

after the Union's valid request for reinstatement, was established in the original proceedings, 1961, 132 N.L.R.B. 1194, enforced, 5 Cir. 1962, 310 F.2d 565.

With regard to the five employees who did not apply for reinstatement with the rest of the strikers, the Backpay Specification shows that the Board computed their backpay awards from the dates on which they were first actually available for work.[1] On this score therefore Mooney Aircraft has no cause for complaint.

As for the three strikers who received offers of reinstatement before the other strikers were permitted to return to work, the Board has held, and we agree, that an offer to reinstate a few strikers does not constitute an unconditional offer, but rather an invidious form of discrimination. E. g., Barr Marketing Co., 1951, 96 N.L.R.B. 875; see NLRB v. Poultrymen's Service Corp., 3 Cir. 1943, 138 F.2d 204, 210. Since the three employees here involved were therefore not obliged to accept the offers, they are entitled to receive backpay for the contested period between July 14 and July 18.

### III.

The validity of the Company's third and fourth objections to the Board's order turns on who has the burden of proof. When the strikers were reinstated, they were permitted to work only a 32-hour week, rather than the 40-hour week which had been the custom before the strike. The Board found this to be unlawful and ordered backpay computed on the basis of a 40-hour work week. The Board computed the various backpay awards in strict accordance with the formula spelled out in the original order enforced by this Court: A "sum of money which [each employee] * * * would have earned as wages based on a 5-day 40-hour work week during the period from July 11 * * * to the day of complete reinstatement, less the wages received from the Respondent during the period of incomplete reinstatement." 132 N.L.R.B. 1194, 1195. The Company now contends that some of the work missed by certain employees resulted from absences for personal reasons rather than from the short work week. Mooney Aircraft offers nothing other than bald assertions in its answer in this Court to support this contention. This Court recently said, "Since proof of damages is the general counsel's burden, the courts traditionally have left with the employer the burden of proving facts that mitigate the extent of the damages." NLRB v. Miami Coca-Cola Bottling Co., 5 Cir. 1966, 360 F.2d 569, at 575. While that statement was made with regard to the issue of wilful loss of earnings, we think its general principle is applicable to the present case. The company raised this point only very generally, if at all, before the Board. In these circumstances, it would be entirely unreasonable to require the Board to negative every possible circumstance which might lead to diminution of damages. Here the company required all absences, and the reasons for them, to be reported to it. The reasons for an employee's absence would therefore be on record in the Company's files and within the knowledge of the Company. Accordingly, Mooney Aircraft should have the burden of proving that the various absences were for reasons other than the short week. In the absence of such proof, the Board's computations must stand.

Finally, the company insists that it is not obliged to pay any backpay awards whatsoever since the Board did not produce testimony concerning the striker's interim earnings during the period between July 11 and their complete reinstatement. While the General Counsel has the burden of proving unlawful discrimination on the part of the employer, and hence that backpay is due, the employer usually has the burden of

1. See Backpay Specification and Notice of Hearing:

| Employee | Page |
| --- | --- |
| R. C. Reed | 7 |
| J. J. Morrow | 18 |
| J. C. Roe | 20 |
| K. F. Wilke | 30 |
| L. H. Ludeke | 32 |

establishing affirmative defenses which would mitigate his liability. NLRB v. Miami Coca-Cola Bottling Co., supra; NLRB v. Brown & Root, Inc., 8 Cir. 1963, 311 F.2d 447. Among these affirmative defenses are the unavailability of jobs because of nondiscriminatory factors,[2] the employees' wilful loss of earnings,[3] and employees' interim earnings to be deducted from the backpay award.[4]

Two "burdens of proof" must be assigned in connection with these defenses —the burden of going forward with some evidence, and the burden of actually establishing or negating the defense. The cases are unanimous that the employer must establish these defenses by a preponderance of the evidence. NLRB v. Miami Coca-Cola Bottling Co., supra; NLRB v. Mastro Plastics, Corp., 2 Cir. 1965, 354 F.2d 170; NLRB v. Brown & Root, Inc., supra. We are concerned here with the burden of going forward— of producing the first evidence.

The Second Circuit has recently decided that the Board carries the burden of going forward on the issue of wilful loss of earnings. NLRB v. Mastro Plastics Corp., supra. In that case the Court distinguished that defense from the defense of job unavailability. The facts relating to the availability of jobs, it reasoned, were peculiarly within the knowledge of the employer, and he should therefore have the burden of producing evidence on this issue. On the other hand, the court thought that "information relevant to whether the discriminatees wilfully incurred a loss of earnings is within the knowledge of the discriminatees, not the employer", and accordingly assigned the burden of going forward to the Board. The Board, it said, "presumably has some prior contact with available discriminatees when it com-

putes 'net back pay due' for its specification, * * * [and therefore] it is more likely to know their whereabouts at the time of the hearing." Id. at 177.

The Second Circuit's reasoning would lead to the conclusion in this case that the Board should carry the burden of going forward on the issue of interim earnings. Information relevant to establishing the amount of an employee's income during the period of an unlawful discharge is more readily available to the employee than to the employer. On this precise point the *Mastro* decision is in conflict with the Eighth Circuit's decision in NLRB v. Brown & Root, Inc., supra. The Court there held that since interim earnings mitigated the employer's liability as fixed by the Board, the issue was an affirmative defense and the Board's failure to produce the employees' testimony was not fatal to its case.

We think that the Board need not produce the testimony of each and every employee. First, we are not entirely convinced that the employees' knowledge about their efforts to find interim work and the financial success they encountered can realistically be imputed to the Board. More important, to require the Board to call every employee in every case would place an intolerable burden on the agency, particularly where large numbers of employees were involved and there was little basis to dispute the Board's calculations.[5] A better rule would leave the burden on the employer, who could produce the employees' testimony whenever necessary to dispute the Board's figures, but who certainly would not find it necessary to call every employee involved. We conclude, however, that the employer should be given every opportunity to call the employees to testify on the issue of their interim

2. NLRB v. Mastro Plastics, Corp., 2 Cir. 1965, 354 F.2d 170.

3. NLRB v. Miami Coca-Cola Bottling Co., supra.

4. NLRB v. Brown & Root, Inc., supra.

5. Here the employees were reinstated to a four day work week only one week after the backpay period began. It is unlikely that any of the employees found interim employment during that week or for the one day per week that they did not work for Mooney thereafter.

earnings,[6] and that upon the employer's request, the Board should make available any information in its possession relevant to the whereabouts of the employees. When the Board calls an employee, it must, of course, permit the employer to cross examine him on any relevant matter. NLRB v. Miami Coca-Cola Bottling Co., supra.

■ In this case, the Company was not denied the opportunity to call the employees as witnesses. Indeed, the trial examiner urged Mooney to do so.[7] The failure of the Board to call each of the strikers to testify about the amount of his interim earnings was not fatal to its case.

Since we find all of the Company's points to be without merit, the supplemental order of the National Labor Relations Board is enforced.

COX, District Judge (dissenting in part):

In this backpay proceeding before the board it developed on this record that certain of these employees owed this employer undisputed, liquidated debts which the employer was not allowed by the board to recoup against such backpay allowances and therein I am unable to accede to the view of the majority opinion in this case. The board is vested by Congress with broad powers in implementing the wholesome policy and purpose of the National Labor Relations Act under 29 U.S.C., 1964 Edition, § 160. Subsection (c) of said § 160 authorizes the board to enjoin an unfair labor practice as it did in this case "and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter, etc." This is a proceeding in equity with its dominant objective being full restitution to the employee for his losses occasioned by the unfair labor practice of the employer.

While the individual recovery of the particular employee is by no means the primary objective of this backpay provision, it is not designed or intended as any sort of fine or punishment but is imposed with the view and for the purpose of making the employee whole and saving him harmless against loss from the recalcitrant action of the employer. It is sought to excuse and justify the action of the board in refusing the employer credit against such losses for undisputed, liquidated counter obligations of the employee to the employer by saying that the proceeding is not one for the recovery of a private debt or enforcement of a private right. But that observation and contention completely loses sight of the equity nature and character of this backpay adjudication. This record shows that these employees have been accommodated by this employer by extension to them of credit as employees wherein debts have thus been incurred which are outstanding and not discharged. It is unthinkable in any sort of atmosphere of fairness and justice and equity that any board could be authorized to make any kind of determination of backpay due these employees under these circumstances without taking into account these debts thus incurred and not discharged by these employees to this employer. Such action is arbitrary and capricious and completely lacking in all of the tenets of fair play and common justice supposed to be vouchsafed to citizens of this country by the Federal Constitution. An examination and analysis of the cases cited in the majority opinion to justify this capricious rejection of these just credits simply does not support the contention or the conclusion. It is no answer to excuse this board from such action to say that it is a mere administrative agency. Section 160(b) even provides for this high ranking agency to receive its evidence in accordance with the Federal Rules of Civil Procedure. The

---

6. In an appropriate case, this might include use of the escrow arrangement employed in NLRB v. Brown & Root, Inc., supra, whereby gross backpay is paid into escrow pending the availability of the employee's testimony.

7. Trial Examiner's Decision on Backpay, 1964, 148 N.L.R.B. 1057, 1062.

principle of restitution has never envisioned such capriciousness. Fairness and justice and equity is the keynote of a backpay proceeding. Only actual losses of these employees were ever intended by Congress to be made good in a backpay proceeding and it was never intended that they should be paid twice for the same loss. That sort of award certainly may not be justified or excused by the administrative nature of the proceeding. When this board decided in furtherance of public policy as to the propriety of the backpay proceeding, it became thereby mandated by Congress to make a proper award or none at all. If this employee account had not been liquidated and undisputed, or if the claim against the employee were complicated and unrelated to the particular account, there may have been some justification of the board in declining to pass upon such claim for mitigation in an action where restitution was the objective. That is the philosophy of Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 61 S.Ct. 845, 854, 85 L.Ed. 1271 where the Court said: "Simplicity of administration is thus the justification for deducting only actual earnings and for avoiding the domain of controversy as to wages that might have been earned. But the advantages of a simple rule must be balanced against the importance of taking fair account, in a civilized legal system, of every socially desirable factor in the final judgment. The Board, we believe, overestimates administrative difficulties and underestimates its administrative resourcefulness." The Court there thought the board thoroughly capable in its final judgment of rendering a fair account according to facts.

The other questions in dispute are supported on record by substantial evidence and are conclusive here. I must, therefore, respectfully dissent from the majority opinion to the extent indicated, and would thus refuse relief in part and remand this case to the board for a proper award of backpay allowances accordingly.