**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**ROGERS MFG. CO., Respondent.**

**No. 16997.**

United States Court of Appeals Sixth Circuit.

Feb. 10, 1969.

Paul J. Spielberg, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Edith Nash, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Roy E. Browne, Akron, Ohio (Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on the brief), for respondent. Roy E. Browne, Akron, Ohio, of counsel.

Before PHILLIPS and PECK, Circuit Judges, and HOGAN, District Judge.*

HOGAN, District Judge.

The Board petitions pursuant to 29 U.S.C. § 160(e) for enforcement of its supplemental order, issued under 29 U.S.C. § 160(c), fixing backpay. The Board's decision and order, issued May 2, 1967, are reported in 164 NLRB No. 46. On October 11, 1965, the Board found that the Rogers Mfg. Co., respondent, of Akron, Ohio, had discharged employee Sarah LaRue in violation of 29 U.S.C. § 158 (a) (3) on February 4, 1965; it ordered the respondent to offer her reinstatement and to make her whole for any loss of pay caused by its discrimination (155 NLRB 117). On June 2, 1965, this Court enforced the Board's order pursuant to the parties' joint motion for entry of a consent decree. The parties were unable to agree on the amount of backpay due LaRue. Backpay proceedings (NLRB Rules and Regs. 29 C.F.R. 102.52 et seq.) were thereupon initiated and concluded. Under the Board's conclusions and supplemental order the backpay period began February 4, 1965, and ended April 7, 1966. The amount of backpay as determined by the Board—$4,085.39, included $34.79 (reflecting an underpayment during a period of reinstatement running from December 16, 1965, when LaRue returned to respondent's employ) and included $204.78 (vacation pay) and reflected a mitigation item of $40.00 (interim earnings) which were removed from controversy either on brief or in argument. The controversy is with respect to that part of the Board's order which ordered payment for the period from April 6, 1965 (the date the Union [bargaining representative for respondent's employees, International Chemical Workers Union, AFL-CIO] called a strike) to December 16, 1965 (the date the respondent recalled LaRue to work). The Board's supplemental order did not include interest.

Basically, the question presented is the validity of the inclusion in a supplemental backpay period of the time during which an employee (who is also a union official, previously discharged via an unfair labor practice) walks a picket line in an economic strike, called subsequent to the discharge, and the time thereafter.

The question is posed by these facts. LaRue was continuously in the employ of respondent from September, 1946, until her discharge in February of 1965—19 years—longer than any other female employee. From the time the union began organizing respondent's employees, LaRue became an active union "protagonist." [1] She was a "zealous and aggressive Union advocate * * * an ardent Union Supporter." (155 NLRB No. 17.)[1] The union won a Board-conducted election and was certified on December 18, 1964, as the employees' bargaining representative. LaRue was elected as a union trustee. She became a member of the union's negotiating committee and attended three bargaining sessions prior to her discharge. She continued to be active on the negotiating committee after her unlawful discharge on February 2, 1965, and attended all the bargaining sessions she was notified about; probably all. She considered herself an "officer of the union." On February 8, 1965, the union filed with the Board a charge regarding her discharge, which resulted in the Board's order of October 11, 1965, and this Court's consent order of June 2, 1966. On April 6, 1965, the union called a strike and maintained a picket line at the plant for about three months. During the strike, negotiations continued for some few months at least and Mrs.

---

* Honorable Timothy S. Hogan, United States District Judge for the Southern District of Ohio, sitting by designation.

1. The "quotes" indicate the description is that of the petitioner-Board on brief or in fact findings.

LaRue continued to sit on the committee. In July a Summit County (Ohio) Common Pleas Court injunction issued limiting the pickets; the injunction was violated; contempt proceedings followed (not involving Mrs. LaRue as far as the record before us indicates) and, also in July, the State Court "removed all the pickets." During the three months' picketing period (April—July, 1965) LaRue walked the picket line "every other day." The strike has never been formally terminated by the union, so that the "call" remained in effect during the entire period in question (April—December, 1965) and LaRue was a union member and trustee during that time. On December 16, 1965, shortly after the Board's basic order issued, respondent recalled LaRue and she promptly answered the call. It was the first recall by respondent and, at no time prior thereto, had LaRue applied for reinstatement.

■ The basic substantive and procedural (burden of proof) principles applicable to backpay upon reemployment, subsequent to an unfair labor practice discharge, have been stated by this Court in a series of decisions, beginning with N. L. R. B. v. Cambria Clay Products Co., 215 F.2d 48 (1954), and recently including N. L. R. B. v. Interurban Gas Co., 354 F.2d 76 (1965); N. L. R. B. v. Reynolds, 399 F.2d 668 (1968); and N. L. R. B. v. Robert Haws Co., 403 F.2d 979 (1968). The references render repetition unnecessary. In a sentence, in this context, "the employer has the burden of proving facts that show no liability or that mitigate the extent of the damage."

The Board's conclusion that the burden had not been met by respondent was based, not on the usual finding of fact (for all practical purposes binding on this Court, N. L. R. B. v. Interurban Gas Co., supra, 354 F.2d at 78), but on a conclusion of law. That is apparent in

the Trial Examiner's decision ("adopted" by the Board)—

> "*LaRue's activities as union officer* and in contract negotiations, both before and *after* her discharge, are *irrelevant* [2] to the issue here."

Beginning with Spitzer Motor Sales, 102 N.L.R.B. 437 (1953) and continuing through Merchandiser Press, 115 N.L.R.B. 1441 (1956), East Texas Steel Castings Co., 116 N.L.R.B. 1336 (1956), and to its decision in this proceeding, the Board has consistently held—in cases involving employees wrongfully discharged *before* an economic strike is called—that the strike duration (during which time perhaps there would have been replacement of economic strikers or job discontinuances because of operation reduction, or perhaps the employee involved might have gone out and stayed out on strike) ante recall *is includible* in the backpay award period because—

> " * * * the respondent's contention, which is based on conjecture and speculation, is unsound, * * * as the employer's own discrimination against the claimant has made it impossible to ascertain whether they would have gone out on strike in the absence of such discrimination, the uncertainty must be resolved against the employer." *East Texas*, supra, at 1339–40.

A careful examination of the Board cases, previous to this one, and of the related decisions, N. L. R. B. v. East Texas Steel Castings Co., 211 F.2d 813, at 816 (5th, 1954); 255 F.2d 284 (5th, 1958—same case, on review of backpay order [3]) makes this clear—the extent of the "pro-union or anti-employer" activity of the employees involved began and ended with "joining the union." None of the employees involved in those cases would qualify for the adjectival attributions of the Board to LaRue noted above ("protagonist," etc.). None was a union "of-

---

2. Emphasis, this Court's. While "picketing" is not specified, its inclusion is obviously implied.

3. Approved in N.L.R.B. v. Miami, Coca-Cola Bottling Co., 360 F.2d 569 (5th, 1966).

ficer"—or "trustee"—or "bargaining team member"—or "picket." [4]

■■ True it be that "the particular means by which the effects of unfair labor practices are to be expunged are matters 'for the Board, not the courts, to determine,' " Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568 (1942), and "that administrative determination * * * should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act," Virginia Electric & Power Co. v. National Labor Relations Board, supra, at 540, 63 S.Ct. at 1218 (N. L. R. B. v. Interurban Gas Co., supra, 354 F.2d at 78); but, also true it be that "It (the Board) must have regard for considerations governing the mitigation of damages." National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, at 346, 72 S.Ct. 287, at 289, 97 L.Ed. 377 (1952).

■ Axiomatically, the determination of relevancy is a matter of law and not of fact. We hold simply that the pro-union activity of an unlawfully discharged employee during a subsequently called economic strike is relevant to the determination of the appropriate back-pay period, i. e., is a "consideration" to which "regard * * * must" be given. Whether the Trial Examiner, giving consideration to rejected (excluded) relevant evidence would have factually found differently, and/or whether the Board would have "adopted" any such different factual conclusions are not for this Court. "Fact finding" is the province of "the Board" (29 U.S.C. § 160(e)) and a Court may not venture into that area—either initially or via substitution. The mandate of a statute is not "logomachy"—to follow the mandate is not to "enter into a bog," National Labor Relations Board v. Seven-Up Bottling Co., supra, at 348, 73 S.Ct. 287. N. L. R. B. v. United Insurance Co., 390 U.S. 254, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968), is not unheeded. There is not before us a *determination* —"involving no special administrative expertise" that a court does not possess, "resulting" in the "Board's choice between two fairly conflicting views" which should not be "displaced" by a court— there is before us a conclusion made without giving consideration to "two fairly conflicting views." Cf. General Electric Co. v. N. L. R. B., 400 F.2d 713 (5th, 1968). "Nevertheless, we must not condone an erroneous conception of the balance, especially when the conflicting interests may not have been explored by the Board. * * *" It is, in this context too, the "primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justifications [5] and the invasion of employees' rights in the light of the Act and its policy.' " N. L. R. B. v. Fleetwood Trailer Co., 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967). [6]

---

**4.** Two of the 10 employees involved in *East Texas*, supra, might qualify, at the most, for "officer" or "protagonist."

**5.** "Mitigation" in this context.

**6.** Respondent also urges in mitigation that, during the strike, it was illegal for respondent to ask LaRue to return to work. The claim is that soliciting a striker to return is in derogation of the union's status as exclusive bargaining agent, constituting an unfair labor practice under Sec. 8(a) (1) of the Act. See Texas Gas Co., 136 NLRB No. 38; 143 NLRB No. 95; and particularly N.L.R.B. v. Acme Air Appliance Co., 117 F.2d 417 (2nd, 1941— Judge Hand (A.N.)) at 420—"To permit the employer to go behind the chosen bargaining agent and negotiate with the employees individually * * * in spite of the fact that they had not revoked the agent's authority, would result in nothing but disarrangement of the mechanism for negotiation created by the Act, disparagement of the services of the union * * * which it is the avowed purpose of the Act to avoid or mitigate."

However, the respondent could easily put the question at rest by a reemployment offer — however vain — *through* the union. See N.L.R.B. v. Trucking Co., 57 L.C. No. 12688 (1st Cir., 1968) where such was in fact done.

The Board's Backpay Order is enforced in respect of the vacation pay item, is enforced for the period from the wrongful discharge (February 4, 1965) to LaRue's commencement of picketing (April 6, 1965),[7] is otherwise denied enforcement and this cause is remanded for any further proceedings consistent herewith.

---

7. The Board, on brief, suggests the enforcement decree should "specify the Company's obligation to pay interest on the backpay award, in order to avoid * * * dispute over compliance." The Board states "the supplemental order inadvertently fails to mention payment of interest * * *." The "may" in 29 U.S.C. § 160 (c) is the "may" of the Board; not a court. "Adding to" is not included in "modifying." 29 U.S.C. § 160(e). Cf. N.L.R.B. v. New York Merchandise, 134 F.2d 949 (2nd, 1943); and N.L.R.B. v. American Compress Warehouse, 374 F.2d 573 (5th, 1967).