NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

PILOT FREIGHT CARRIERS, INC., and
BBR of Florida, Inc., Respondents.

No. 79–1174
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 11, 1979.

Rehearing Denied Nov. 8, 1979.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Associate, Gen. Counsel, Carol DeDeo, Supervisor, Patricia Matthews, Atty., N.L.R.B., Washington, D.C., for petitioner.

Blakeney, Alexander & Machen, Whiteford S. Blakeney, J. W. Alexander, Jr., Charlotte, N.C. for Pilot Freight Carriers, Inc.

APPLICATION FOR ENFORCEMENT OF A SUPPLEMENTAL ORDER OF THE NATIONAL LABOR RELATIONS BOARD

Before BROWN, Chief Judge, and KRAVITCH and JOHNSON, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

On March 25, 1976, the National Labor Relations Board issued a decision and order against respondents Pilot Freight Carriers, Inc., and BBR of Florida, Inc. (referred to collectively as "the Company"), finding that the Company had violated Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*, by discharging Melvynn Johnston for protected union activities and

that a strike against the Company which began two weeks later was an unfair labor practice strike, in part because of Johnston's discharge. The Board ordered the Company to reinstate Johnston and to reimburse him for lost earnings. On May 21, 1976, the Board filed an application for enforcement of its order with this Court. This Court subsequently granted a motion to withdraw the application for enforcement after the parties entered into a stipulation in which the Company "waive[d] its right to contest in any future proceeding in this Court any of the Board's findings and conclusions with respect to the unfair labor practices alleged and found . . . to have been committed against Melvynn Johnston" and further agreed that "if Pilot seeks judicial review of a subsequent Board decision awarding backpay to Melvynn Johnston . . ., it is understood that Pilot will be precluded in such proceeding from challenging the propriety of the unfair labor practice findings or remedial provision in the Board's original decision and order." [1] Because the parties were unable to agree on the amount of backpay to which Johnston was entitled, a hearing was held on September 13, 1977, in which the Board claimed that backpay in the amount of $5,110.89 plus interest was owing to Johnston for the period from February 7, 1974, when he was discharged, to September 9, 1976, when he was reinstated. The Administrative Law Judge concluded that an order should be issued in accordance with the Board's specification. On September 26, 1978, the Board issued its decision and order, adopting without modification the Administrative Law Judge's proposed order. The case is now before the Court for enforcement of that supplemental order.

The Board enjoys broad, discretionary authority to formulate a remedy where an unfair labor practice has been committed. *N. L. R. B. v. J. H. Rutter-Rex Mfg. Co.*, 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969). "When the Board . . . makes an order of restoration by way of backpay, the order 'should stand unless it can be shown that the order is a patent

attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.' " *N. L. R. B. v. Seven-Up Bottling Co.*, 344 U.S. 344, 346, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1953). Upon the record in this case, we cannot say that the Board has overstepped its authority.

Where backpay is in dispute, the sole burden on the Board is to show the gross backpay due the claimant. *J. H. Rutter-Rex Mfg. Co. v. N. L. R. B.*, 473 F.2d 223 (5th Cir. 1973); *Marine Welding & Repair Works v. N. L. R. B.*, 492 F.2d 526 (5th Cir. 1974). While the law is clear that actual interim earnings and losses willfully incurred will be deducted from gross pay, *Phelps Dodge v. N. L. R. B.*, 313 U.S. 177, 197–200, 61 S.Ct. 845, 85 L.Ed. 1271 (1941), the burden is on the employer to prove such earnings or losses. Failure to mitigate damages by a refusal to search for alternative work or by a refusal to accept substantially equivalent employment is an affirmative defense. *N. L. R. B. v. Mooney Aircraft, Inc.*, 366 F.2d 809 (5th Cir. 1966); *N. L. R. B. v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569 (5th Cir. 1966). However, the employer does not meet its burden by proving that the employee failed to find interim employment. The law only requires of the employee "reasonable exertions in this regard, not the highest standard of diligence." *N. L. R. B. v. Arduini Mfg. Corp.*, 394 F.2d 420, 423 (1st Cir. 1968); *N. L. R. B. v. Miami Coca-Cola Bottling Co., supra.*

The record supports the Board's conclusion that the Company did not carry its burden. The Company argues that Johnston willfully withdrew from the labor market during the more than nine weeks that he participated in the trial of the unfair labor practice case underlying this appeal. The time spent in trial, the Company contends, is time Johnston could have spent working and receiving wages. While that may be true, it does not establish that Johnston refused either to seek employment or to accept it. Moreover, Johnston's attendance at the unfair labor practice trial was not "voluntary." Not only was he subpoe-

---

1. Exhibit 1(b) of the Official Report of Proceedings before the National Labor Relations Board,

cases numbered 12–CA–6267, 12–CA–6288 and 12–CA–6384.

naed but, more importantly, his statutory rights were at stake in that proceeding. If his presence was not "voluntary," then his participation was not a willful withdrawal from the labor market. Whether or not his participation in the litigation was itself a search for employment, as the Board argued, we need not decide, the law is clear that an employee who has been the target of an unfair labor practice need not choose between mitigation of damages and the vindication of his statutory rights. *N. L. R. B. v. Madison Courier, Inc.*, 153 U.S.App.D.C. 232, 242–245, 472 F.2d 1307, 1317–1320 (D.C. Cir.1972).[2] For that portion of the backpay period when Johnston was unquestionably free to work, the Company does not deny that he accepted employment and thereby reduced the amount of backpay owed him.

█ The Company further contends that the Board's order should be denied enforcement because the Administrative Law Judge prevented it from proving that Johnston removed himself from the labor market by striking against the Company. The Company relies on the holding in *N. L. R. B. v. Rogers Mfg. Co.*, 406 F.2d 1106, 1110 (6th Cir. 1969), that "the pro-union activity of an unlawfully discharged employee during a subsequently called economic strike is relevant to the determination of the appropriate backpay period." The Company mistakes the real issue, however, and therefore asks the wrong question. The Company would prove that Johnston was such an ardent union supporter that under no circumstances would he have crossed the picket line. That offer of proof, however, assumes the existence of a strike. But the Board found, and the Company stipulated, that the strike was an unfair labor practice strike, caused in part by Johnston's discharge. From that finding of causality it follows that absent the Company's unlawful discrimination, there would have been no strike and Johnston would have earned full pay for the strike period. In *Rogers Mfg. Co.*, on the other hand, the strike was an economic, not an unfair labor practice, one. Therefore, the *Rogers* court could not deduce that absent the discharge, the strike would not have occurred. In other words, the court could not deduce that an offer of reinstatement to the previously discharged employee would terminate the strike. The issue in *Rogers Mfg. Co.*, then, was a different one: whether the discharged employee would have refused an offer of reinstatement, thus tolling the employer's backpay liability, because of the economic strike. With regard to that issue, not present in this case, the extent of an employee's allegiance to the union is indeed relevant. Here, however, the finding of an unfair labor practice strike, stipulated to by the Company, resolves the issue of whether Johnston would have gone on strike absent the discrimination against him.

█ Even if it is conceded that an unfair labor practice strike might have been called absent Johnston's discharge (in that the Board did not find that his discharge was the sole cause of the strike), any uncertainty on that score must be resolved against the employer. This Circuit has taken the position that "when an employer's unlawful discrimination makes it impossible to determine whether a discharged employee would have earned backpay in the absence of discrimination, the uncertainty should be resolved against the employer." *N. L. R. B. v. Miami Coca-Cola Bottling Co.*, 360 F.2d 569, 572–573 (1966); *N. L. R. B. v. East Texas Steel Castings Co.*, 255 F.2d 284 (5th Cir. 1958); *accord, Winn-Dixie Stores, Inc. v. N. L. R. B.*, 502 F.2d 1151 (4th Cir. 1974).

█ Finally, the Company argues that the Board's computation of backpay is in error because it fails to account for "the economic realities of the strike." The Board, of course, "is only required to em-

2. The Company's citation of General Electric Company, 230 N.L.R.B. 683 (1977), Electronic Research Company, 190 N.L.R.B. 778 (1971) and Golden Arrow Dairy, 194 N.L.R.B. 474 (1972) is inapposite. While as a general rule it is true that an employer is not obligated to pay employees who appear as witnesses for the union, the question in those cases was whether the employer discriminated against, or interfered with, employees in the exercise of their statutory rights. The question here is whether Johnston was guilty of a willful loss of earnings within the meaning of *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

ploy a formula reasonably designed to produce approximate awards due." *Trinity Valley Iron & Steel Co. v. N. L. R. B.*, 410 F.2d 1161, 1177 n.28 (5th Cir. 1969); *N. L. R. B. v. Charley Toppino & Sons, Inc.*, 358 F.2d 94, 97 (5th Cir. 1966); *N. L. R. B. v. East Texas Steel Castings Co., Inc., supra.* The use of Johnston's average weekly earnings for the seven weeks preceding his discharge as the basis for computing backpay was a reasonable formula. Because the strike was caused by the Company's illegal action, any diminution in work opportunities during the strike period is no reason for reducing Johnston's award. The Board also correctly determined that the Company did not meet its burden of proving that the backpay specification did not account for all of Johnston's interim earnings. *See N. L. R. B. v. Mooney Aircraft, Inc.*, 366 F.2d 809, 813 (5th Cir. 1966).

Enforcement of the Board order is GRANTED.