**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**LAREDO PACKING COMPANY,
Respondent.**

No. 83–4198.

United States Court of Appeals,
Fifth Circuit.

April 23, 1984.

Rehearing and Rehearing En Banc
Denied July 12, 1984

James S. Cheslock, San Antonio, Tex., for respondent.

Before RUBIN, JOHNSON, and DAVIS, Circuit Judges.

PER CURIAM:

In March 1979, the National Labor Relations Board (Board) issued a decision and order against respondent Laredo Packing Company, finding that Laredo had violated section 8(a)(3) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) and (1), by discharging sixteen employees for engaging in protected union activities. *Laredo Packing Co.*, 241 N.L.R.B. 184 (1979). The Board ordered Laredo to offer reinstatement to those employees and to reimburse them for lost earnings. *Id.* at 186. This Court enforced that order. *NLRB v. Laredo Packing Co.*, 625 F.2d 593 (5th Cir.1980), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981). Because the parties were unable to agree on the amount of back pay due the employees, a hearing was held before an Administrative Law Judge (ALJ) who determined that a total of $72,594.24 was due in back pay awards to fifteen claimants and that an additional $3,000 be held in escrow for a claimant who could not be located at the

time of the hearing. Thereafter, the Board affirmed the ALJ's findings and adopted his proposed order. *Laredo Packing Co.,* 264 N.L.R.B. No. 37 (1982). The case is now before the Court for enforcement of the Board's supplemental order. Laredo has reimbursed six of the claimants, but contests the awards as to eight truck drivers and two other employees. We find all of respondent's arguments unpersuasive and enforce the Board's order.

Upon finding that an unfair labor practice has been committed, the Board is empowered to order the offender "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of ... [the National Labor Relations] Act...." 29 U.S.C. § 160(c). The Board's remedial power in this regard is wide and discretionary; subject to scanty judicial review. *NLRB v. J.H. Rutter-Rex Manufacturing Co.,* 396 U.S. 258, 262–63, 90 S.Ct. 417, 419–20, 24 L.Ed.2d 405 (1960); *NLRB v. Pilot Freight Carriers, Inc.,* 604 F.2d 375, 377 (5th Cir.1979). Indeed, when the Board orders restoration by way of back pay, the order will not be disturbed absent a showing that the order is an obvious attempt to further ends other than those which can be fairly said to effectuate the policies of the Act. *Pilot Freight Carriers, Inc.,* 604 F.2d at 377. We review the Board's findings of fact under the substantial evidence test. 29 U.S.C. § 160(e) and (f). Therefore we must look to the entire record to determine whether there is substantial evidence to support the Board's findings in this case. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951).

In back pay proceedings, the Board's primary burden is to prove the gross amount of back pay due each claimant. *J.H. Rutter Rex Manufacturing Co. v. NLRB,* 473 F.2d 223, 230 (5th Cir.) *cert. denied,* 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973). Once the Board shows that back pay is owed, the burden shifts to the employer to demonstrate facts which mitigate liability. *NLRB v. Miami Coca-Cola Bottling Co.,* 360 F.2d 569, 575 (5th Cir.1966). A claimant's failure to search for alternative work, his refusal to accept substantially equivalent employment, or his voluntary quitting of alternative employment without good cause constitute affirmative defenses for the employer. *See id.; Pilot Freight Carriers, Inc.,* 604 F.2d at 377; *NLRB v. Mooney Aircraft, Inc.,* 366 F.2d 809, 812–13 (5th Cir.1966). In the supplemental proceedings before the ALJ, Laredo's proof consisted of a relitigation of its contention that the Company was justified in its failure to offer driving jobs to the truckers because they were uninsurable. The Company contended, as it now urges, that its back pay liability was tolled as to the truck drivers who refused respondent's offer of nondriving employment or quit the nondriving jobs after initially accepting the interim employment. The uninsurability issue had already been decided adversely to Laredo in the prior Board proceedings [1] and in the prior enforcement proceedings before this Court.[2] It was therefore the law of the case that Laredo's actions in discharging the truckdrivers stemmed from discriminatory motives. It is not disputed that the Company's offer of work on the kill floor, which involves the slaughtering and processing of cattle, is substantially unlike the work of hauling cattle or delivering processed meat. The respondent's offer of work on the loading dock to two of the claimants is likewise

---

**1.** The ALJ specifically noted that the Board's initial decision repeatedly emphasized that the Company "acted precipitously in acceding to the demands of its insurance agent and carrier, and discharged the aforementioned drivers without first investigating, on a specific driver-by-driver basis, the insurance carrier's underlying rationale for excluding each driver from insurance coverage." Record at 248.

**2.** In holding that the Board's initial findings were supported by substantial evidence on the record as a whole, a panel of this Court stated: "With particular regard to the eight truck drivers discharged due to their purported uninsurability, we rely on the Board's thorough and well-reasoned opinion...." *NLRB v. Laredo Packing Co.,* 625 F.2d at 594.

significantly dissimilar to truck driving. A wrongfully discharged employee is not required to "seek employment which is not consonant with his particular skills, background, and experience" or "which involves conditions that are substantially more onerous than his previous position." *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C.Cir.1972). In other words, a claimant is not required to accept anything other than "suitable" interim employment. *Id.*

■ The Board reasonably found that the Company did not establish that the drivers were indeed uninsurable. For instance, the Board noted that the Company admittedly did not question or attempt to appeal its insurance carrier's stated intention to exclude the drivers from insurance coverage, and that the Company failed to show that such an appeal would have failed. In fact, the drivers' records suggest that such an appeal might have succeeded. Thus, Laredo cannot meet its burden of establishing facts in mitigation of back pay by showing that the drivers refused the Company's offers of reinstatement to alternate nondriving positions.

■ In the alternative, Laredo maintains that the Board erred in failing to toll back pay to the claimants who quit interim jobs with the Company shortly after accepting the work. Three of the wrongfully discharged truck drivers accepted respondent's offer of interim work on the Company's kill floor. These employees quit after working for periods ranging from one day to three weeks because they found the work disagreeable.[3] Respondent relies upon *NLRB v. Aycock*, 377 F.2d 81, 87 (5th Cir.1967), in which this Court held that:

> Where a discriminatee takes an interim job with the discriminator, his quitting for reasons unconnected with the discrimination tolls the discriminator's back-pay obligation to the extent of the interim wage; this is the same result as if the

discriminatee had *unjustifiably* quit a similar job with a third party. (emphasis added)

Laredo's reliance on *Aycock*, however, is misplaced. As previously noted, a discriminatee's duty to mitigate damages does not require him to accept unsuitable interim employment. The ALJ and the Board found that the claimants were justified in quitting their jobs on the kill floor in order to seek more acceptable employment. This finding is supported by substantial evidence on the record as a whole. Clearly, the situation presented in the case *sub judice* is not one where a claimant quit interim employment with the discriminator merely "for any reason which [came] into his head." *See Aycock*, 377 F.2d at 88. In contrast, the trial examiner in *Aycock* specifically found that the discriminatee was unjustified in quitting the interim job offered by the discriminator. *Id.* at 85.

■ Laredo next challenges the Board's findings that claimants Medina, Santos, and Gaono made reasonably diligent searches for employment during various quarters of the back pay period. Respondent also attacks the Board's findings regarding the Company's claim that these employees concealed interim earnings. The credibility and trustworthiness of witnesses is a matter for the Board to resolve and its determination will be upheld unless its decision is "inherently unreasonable" or "self-contradictory." *See NLRB v. National Fixtures, Inc.*, 574 F.2d 1305, 1306 (5th Cir.1978). Substantial evidence on the record as a whole supports the Board's findings. We are therefore bound to accept them.

■ Respondent finally contends that the Board's refusal to strike claimant Oscar Martinez's name from the back pay specification after Martinez failed to appear at a back pay hearing was in error because the Board had a duty to produce him. The record reveals that Martinez was

---

**3.** The reasons given by the discriminatees for quitting the nondriving jobs were that they considered themselves to be truck drivers, they found the kill floor work distasteful, and be-

cause they were unable to perform the heavy physical work involved. Record at 71–72, 76–77, 89–90, 98–99, 115.

subpoenaed by respondent to appear at the hearing by certified mail, return receipt requested. At the time of the hearing, neither a return receipt nor the subpoena had been returned to Laredo. The general counsel's efforts to locate Martinez were unfruitful. When an alleged discriminatee is absent from a back pay proceeding, it is an accepted practice for the Board to place the disputed amount in escrow for one year. *NLRB v. Brown & Root, Inc.*, 311 F.2d 447, 455 (8th Cir.1963); *see Mooney Aircraft, Inc.*, 366 F.2d at 813–14 n. 6. If the discriminatee is located, a hearing on the amount of back pay due him is held. If the discriminatee has not been located at the end of the year, the money is returned to the employer. This was a proper case for the use of the escrow arrangement; if Martinez is not located within twelve months, the disputed amount will be returned to Laredo.

The supplemental order of the National Labor Relations Board is enforced.

ENFORCED.