**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**UNIFORM RENTAL SERVICE, INC.,
Respondent.**

**No. 18090.**

United States Court of Appeals
Sixth Circuit.

Aug. 5, 1968.

Thomas Silfen, N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Asso. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Michael N.

Sohn, Atty., N. L. R. B., Washington, D. C., on the brief.

William P. Hutcheson, Chattanooga, Tenn., for respondent, Humphreys, Hutcheson & Moseley, Chattanooga, Tenn., on the brief.

Before WEICK, Chief Judge, O'SULLIVAN, Circuit Judge, and CECIL, Senior Circuit Judge.

PER CURIAM.

The Board in agreement with the Trial Examiner, found that the Company violated Section 8(a) (1) of the National Labor Relations Act, as amended, (29 U.S.C. Sec. 151 et seq.) by threatening to close its plant if the Union won the election. In disagreement with the Trial Examiner, the Board found that the Company violated Section 8(a) (1) by promising benefits contingent upon the Union's defeat. The Board in further disagreement with the Trial Examiner, found violations of Sections 8(a) (3) and (1) in the discharge of an employee because of Union activities and of Sections 8(a) (5) and (1) by refusal to bargain with the Union after it had obtained majority status. The decision and order of the Board are reported at 161 N.L.R.B. No. 15.

After the Union filed with the Board its petition for an election, the Company sent a letter to its employees expressing its opinion about the Union in rather forceful language. The portion of the letter found objectionable by the Trial Examiner and the Board is as follows:

"The only chance that we have to continue the Owensboro operation is to work together to pull it out of the hole. In my opinion this cannot be done with the Teamsters Union. So far, this plant has lost money. Let's don't shake the boat."

It was not controverted that the Company had in fact been losing money in the operation of the Owensboro plant for the entire two-year period in which it had been operating. The president of the Company had experience with the Union in other plants and was of the view that if the Union won the election, the costs of the losing operation would be increased.

█ It is obvious that the plant could not continue operations at a loss indefinitely. The letter contained a plea to work together and pull the plant out of the hole. The plant manager was of the opinion that this could not be done with the Union. We think the letter was the exercise of the right of free speech guaranteed by Section 8(c) of the Act and was not threatening or coercive. N. L. R. B. v. Hobart Brothers Co., 372 F. 2d 203 (6th Cir.1967); Surprenant Mfg. Co. v. N. L. R. B., 341 F.2d 756 (6th Cir.1965); Union Carbide Corp. v. N.L.R. B., 310 F.2d 844 (6th Cir.1962).

█ We disagree with the Board and agree with the Trial Examiner that the letter contained no promise of benefits contingent upon the Union's defeat. All the letter stated was "When we start making this plant pay its own way, you employees will get your share of the benefits".

█ The Company had the right to discharge an employee, even though she was a Union adherent, when she wrongfully removed a poster placed by the Company on its bulletin board. Merely because the employee was active in the Union organizational effort did not insulate her against discharge for misconduct. The fact that, unbeknown to the company, this same employee shortly before her discharge had entered the plant manager's unattended office and pilfered a letter from his desk supports rather than detracts from the validity of the action taken by the Company in discharging her.

█ The demand made by the Union for recognition was not received by the Company until more than two weeks after it had been mailed. It contained the statement that " * * * we shall be happy to prove our majority status by any means which may be mutually agreeable."

In consenting to the election the Company understood that this was the agree-

**814**

able means by which the majority status would be proven. The agreement for the election was signed more than two weeks after the Company had sent the complained-of letter to its employees.

Representations were made by the Union solicitor to employees that the signature cards were for the purpose of obtaining an election. The Trial Examiner was unable to find that the Company refused recognition of the Union in order to gain time in which to undermine it, nor that its conduct demonstrated a complete rejection of the collective-bargaining principle. The Union's alleged majority was only one. We find no evidence of bad faith on the part of the Company, N. L. R. B. v. Ben Duthler, Inc., 395 F.2d 28 (6th Cir.1968).

Considering the record as a whole, the Board's order is not supported by substantial evidence. Enforcement is denied.