**BOAZ SPINNING COMPANY, Inc.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

No. 20557.

United States Court of Appeals,
Sixth Circuit.

March 29, 1971.

McCree, Circuit Judge, dissented.

David M. Vaughan, Atlanta, Ga., for petitioner; Constangy & Prowell, Atlanta, Ga., on brief.

Seth Rosen, Atty., N. L. R. B., Washington, D. C., for respondent; Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Abigail Cooley Baskir, Jerome Norman Weinstein, Attys., N. L. R. B., Washington, D. C., on brief.

Before WEICK, McCREE and KENT, Circuit Judges.

PER CURIAM.

The Board found that the Company had engaged in an unfair labor practice in violation of Sections 8(a) (5) and (1) of the National Labor Relations Act as amended, in that the Company unlawfully refused to bargain with the Textile Workers Union of America, the union previously certified by the Board as the representative of the Company's production and maintenance employees. 29 U. S.C. § 151, et seq.

The Company operated a textile plant in Guntersville, Alabama, where the events hereinafter detailed occurred.[1] A consent election was held on December 19, 1968 at the Company's plant, to determine whether the employees desired to be represented by the Union for purposes of collective bargaining. The Union lost this election by a vote of 127 to 83. The Union filed timely objections to the election, claiming that in the campaign the Company threatened and coerced its employees, and promised them benefits in order to obtain their votes. The Regional Director found that officials of the Company in their pre-election speeches to the employees did "not exceed the bounds of permissible campaign electioneering and thus do not afford grounds warranting setting aside the election." The Regional Director recommended to the Board that the objections be overruled and that the results of the election be certified. The Union thereafter filed exceptions to the Regional Director's decision, and on June 30, 1969, a two member majority of the Board, Member Zagoria dissenting, held that the election was invalid because two pre-election speeches by two ranking Company officials interfered with the employees' free choice.[2] The Board ordered a second election, which was held on July 31, 1969, in which the Union received a majority of the votes cast. The Company objected to the election, on the ground that the Board unlawfully invalidated the results of the first election. The Regional Director overruled the objection, and on November 20, 1969, the Board affirmed, and certified the results of the second election.[3]

1. This Court has jurisdiction of the proceedings because Boaz Spinning Company is a subsidiary of Standard-Coosa-Thatcher Co., located in Chattanooga, Tennessee.

2. 177 NLRB No. 103.

3. 179 NLRB No. 106.

The Union requested recognition from the Company, and the commencement of contract negotiations. The Company refused, and on January 12, 1970, the Union filed unfair labor practice charges against the Company for refusing to bargain. The Company's defense was that it had not violated the Act by refusing to bargain with the Union because the Union had been invalidly certified, in that the first election was a valid election. The General Counsel moved for summary judgment, which the Trial Examiner granted, on the ground that the issues raised by the Company had previously been resolved by the Board. On June 18, 1970, the Board affirmed the Trial Examiner's ruling that the Company had engaged in unfair labor practices, and ordered the Company to bargain with the Union.[4]

It is this last order of the Board which the Company seeks to review. The Company is following the procedure that an unfair labor practice charge of refusing to bargain is necessary in order to obtain judicial review of the Board's determinations in the representation cases concerning the validity of the elections. Boire v. Greyhound Corp., 376 U.S. 473, 477, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); Automation & Measurement Division, Bendix Corp. v. NLRB, 400 F.2d 141 (6th Cir. 1968); NLRB v. Ortronix, Inc., 380 F.2d 737, 739 (5th Cir. 1967).

The first pre-election speech was delivered on November 12, 1968, by the Company's Vice-President of Manufacturing. The second speech was delivered on December 17, 1968, two days before the election, by the Company's President. Both speeches were carefully prepared, and were read to the employees from a written text. The theme of both speeches was basically the same —what the Company viewed as the bad aspects and effects of the Union's organization of a textile plant. To support this, both speeches repeatedly referred to incidents at other plants, where the advent of the Union coincided with the disruption of the plants' traditionally friendly relations with the employees.

Both speeches were tempered in their remarks however, by statements that the plants referred to did not close or lose business because of the Union's presence, but because they were no longer able to operate and compete effectively in the textile industry.

The Board found that the speeches exceeded the bounds of permissible campaign tactics. It stated that "the whole of the message to the employees was to instill in them a fear of the adverse effects of collective bargaining coupled with the admonition that the selection of the [Union] as their bargaining representative was a complete excursion into futility." Accordingly, it set aside the first election.

 We do not agree with the Board's ruling that the two pre-election speeches were coercive or exceeded the bounds of premissible campaign tactics. As this Court has stated on numerous occasions, the right of free speech in a union organizational campaign is not to be narrowly restricted. Automation & Measurement Division, Bendix Corp. v. NLRB, supra; NLRB v. Uniform Rental Service, 398 F.2d 812 (6th Cir. 1968); NLRB v. Hobart Bros. Co., 372 F.2d 203 (6th Cir. 1967); Surprenant Mfg. Co. v. NLRB, 341 F.2d 756 (6th Cir. 1965). Nor is the right of free speech to be unequally applied as between employers and labor unions. "There is no basis for adopting a narrow restrictive rule for one party and a liberal one for the other." Automation & Measurement Division, Bendix Corp., supra, 400 F.2d at 146.

It is well-settled that

"[A]n employer is free to communicate to his employees any of his general views about unionism or any of his specific views about a particular union, so long as the communications do not contain a 'threat of reprisal or

force or promise of benefit.' He may even make a prediction as to the precise effects he believes unionization will have on his company. In such a case, however, the prediction must be carefully phrased on the basis of objective fact to convey an employer's belief as to demonstrably probable consequences beyond his control * * *." NLRB v. Gissel Packing Co., 395 U.S. 575, 618, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547 (1969).

 We believe that the incidents referred to in the two pre-election speeches, pertaining to the results of unionization elsewhere, were not threatening or coercive, but rather demonstrable evidence of the employer's prediction of the adverse effects of unionization at the Company's plant. So long as the employer's statements do not constitute a threat, "[t]he prediction of unfavorable consequences resulting from unionization is not a violation of the Act." G.P.D., Inc. v. NLRB, 406 F.2d 26, 31 (6th Cir. 1969). Nor do we think that such predictions exceed the bounds of permissible campaign tactics, so long as the incidents referred to by the employer as the basis for his prediction are completely truthful. In the instant case, there have been no allegations that the incidents mentioned in the speeches, referring to the results of unionization elsewhere, were anything but totally factual. We therefore hold that the Board abused its discretion by invalidating the first election on the basis that the pre-election speeches were coercive and exceeded the bounds of permissible campaign tactics.

 The first election was valid, thereby invalidating the second election, held within one year of the first. Therefore, the certification of the Union as collective bargaining representative was likewise invalid. As a result, the Company was under no duty to bargain with the Union, and did not violate Section 8(a) (5) and (1) of the Act. Automation & Measurement Division, Bendix Corp., *supra*, 400 F.2d at 146.

McCREE, Circuit Judge, is of the view that the Board did not abuse its discretion in setting aside the first election because of the two pre-election speeches, and would therefore deny review and would enforce the Board's order.

The order of the Board is denied enforcement.