NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

FLORIDA STEEL CORPORATION,
Respondent.

No. 75–4236.

United States Court of Appeals,
Fifth Circuit.

Jan. 3, 1977.

Elliott Moore, Deputy Assoc. Gen. Counsel, Alan Cirker, Supervisor, Michael F. Messitte, Atty., N.L.R.B., Washington, D.C., for petitioner.

O. R. T. Bowden, William H. Andrews, Jacksonville, Fla., for respondent.

Harold A. Boire, Director, Region 12, N.L.R.B., Tampa, Fla., for other interested parties.

Before COLEMAN, AINSWORTH and INGRAHAM, Circuit Judges.

AINSWORTH, Circuit Judge:

This is an application of the National Labor Relations Board for enforcement of its order, 220 N.L.R.B. No. 56 (Sept. 11, 1975), issued against respondent, Florida Steel Corporation. The Board found that the company had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (3), both by interrogating and discharging Larry Pitts and by discharging Duane Roach because of their union activities during an organizational campaign by the United Steel Workers of America, AFL–CIO. Without disputing that the interrogation and discharge of Pitts were motivated by his union activity, Florida Steel nevertheless contends that he was a "supervisor" under section 2(11) of the Act, 29 U.S.C. § 152(11), and therefore

was not entitled to any relief. The company also contends that its dismissal of Roach was permissible because of his alleged efforts to obtain a list of employees from confidential company records.

■ First, we find little support in the record for respondent's contention that Pitts was a "supervisor" under section 2(11) of the Act.[1] At the time of his discharge, Pitts was serving as "loading coordinator" at Florida Steel's Tampa Structural Steel Depot. Under the direct supervision of a foreman, Pitts and five warehousemen received, stored, and shipped steel. As loading coordinator, Pitts would open the depot in the morning, prepare timecards for the day, perform the routine checking and paperwork involved in the processing of orders and receiving of supplies and, whenever necessary, assist the warehousemen in loading, unloading and storing the steel. Pitts assigned work to the warehousemen only in the absence of the foreman and at no time had the authority to discipline any worker. Like warehousemen, he was paid on an hourly basis, punched the time clock and received the benefits paid hourly employees of the company. Although Pitts' job description contained some indicia of supervisory authority, it is clear that, in practice, his duties were generally routine in nature and did not involve the exercise of independent judgment generally associated with supervisory authority. *See, e. g., NLRB v. Imperial Bedding Co.*, 5 Cir., 1975, 519 F.2d 1073, 1075; *NLRB v. Security Guard Service, Inc.*, 5 Cir., 1967, 384 F.2d

143, 147–48. Therefore, we enforce the Board's order requiring the reinstatement of Larry Pitts.

■ The discharge of Duane Roach was prompted by his surreptitious efforts to have Kathi Gilbert, a clerical employee at one of Florida Steel's Tampa facilities, provide a list of employees working at her plant for the union's use in its organizing activities. In ordering Roach's reinstatement, the Board found that his requests for information constituted an organizational activity protected by section 7 of the Act, 29 U.S.C. § 157. While section 7 guarantees an employee the right to use information available in the normal course of work activity and association, it does not extend to the unauthorized dissemination of information obtained from an employer's confidential files or records. *See News-Texan, Inc. v. NLRB*, 5 Cir., 1970, 422 F.2d 381, 386, *quoting NLRB v. Clearwater Finishing Co.*, 4 Cir., 1953, 203 F.2d 938, 939. The Board concluded that Roach was engaged in protected activity when he sought to acquire the list from Gilbert. This conclusion is not supported by substantial evidence on the record considered as a whole. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

It is undisputed that during the course of several telephone conversations, Roach repeatedly asked Gilbert, a secretary in the plant office, to obtain a list of the addresses and telephone numbers of production employees working at the mill.[2] Roach per-

---

1. Section 2(11) provides as follows:

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

2. Although Gilbert denied being asked to "steal" a list, it is apparent that Roach was seeking to obtain the information without proper authority. This is evident from a conversation between Gilbert and Roach which Florida

Steel had recorded and transcribed after Gilbert informed it of Roach's attempts to secure a list from her. In relevant part, the transcript reads as follows:

GILBERT: Um hum—well, uh, what about this list you were telling me about?

ROACH: Oh. It's just if you coulda got a list of some of the employees that work for Florida Steel—not whitehats—but—you know, regular people like me and Andy—if you could get a list like that with some uh, addresses—just phone numbers would be good enough, ya know—phone numbers—the man would, uh—he told me if anybody got a list like that, he'd give 'em an early Christmas.

GILBERT: How much?

ROACH: I don't know.

sisted in these efforts even after Gilbert informed him that she did not know any production employees. It is clear that Gilbert could have, obtained the desired information only by copying confidential company records.[3] Roach, moreover, clearly indicated to Gilbert that the union would pay her for the list.

In our view, this evidence all but compels the conclusion that Roach was attempting to induce Gilbert to provide confidential company information to the union. Consequently, we set aside the Board's order requiring Florida Steel to reinstate Roach. *See News-Texan, Inc. v. NLRB,* 5 Cir., 1970, 422 F.2d 381.

■ Finally, the company challenges both the NLRB's broad cease and desist order and its requirement that Florida Steel post notices of its violations at all of its Tampa plants. Given the company's recent history of unlawful conduct in connection with organizational efforts by the United Steel Workers,[4] the Board's remedies were unquestionably proper. *See J. P. Stevens & Co. v. NLRB,* 5 Cir., 1969, 417 F.2d 533. Of course, the Board's order must now be modified to reflect our conclusion that Florida Steel properly dismissed Duane Roach.

ORDER ENFORCED IN PART.

GILBERT: Umm. Well, uh, if I could get this list, when do you think he'd want it?
ROACH: Right away. He—he told me—3 o'clock—2 o'clock in the morning—call him in his room.
GILBERT: Uh, huh. Will he pick it up, or—whadda I do with it—after I get it, you know, if I—
ROACH: We could go down there together and give it to 'em, or you could give it to me and I'll give it to 'em, and I'll give 'em your name and address and he'll get in touch with you.
GILBERT: Uh, huh. What if they—well, let's say I wanted to take it to them—whadda I—how—?
ROACH: You take it to Quality Court Motel on 50th Street—
GILBERT: Uh, huh,—
ROACH: Where the Interstate is—
GILBERT: Uh, huh—
ROACH: Room 146—
GILBERT: Uh, huh—
ROACH: And the guy's name is Estes Riffe.
GILBERT: Uh, huh.

ROACH: Tell him that Roach sent you.
GILBERT: O.K. Uh, well, lemme think about it and uh—O.K.?
ROACH: Awright.
GILBERT: And, uh—I'll let you know somethin'.
ROACH: O.K.
GILBERT: O.K. Bye, Bye.
ROACH: Be cool.
GILBERT: Awright.

3. In its brief, the N.L.R.B. contends that Gilbert had access to a nonconfidential list "containing the names and addresses of *each employee* that the Company annually distributed to *all employees* at Christmas" (emphasis supplied). This list, however, consisted only of the supervisor and twelve white-collar employees in Gilbert's own particular "work group."

4. *See, e. g., Florida Steel Corp. v. NLRB,* 5 Cir., 1976, 529 F.2d 1225; *Florida Steel Corp.,* 221 NLRB No. 65, 90 LRRM 1496 (1975), *enforced,* 5 Cir., 1976, 534 F.2d 1405.