**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BROOKSHIRE GROCERY COMPANY, d/b/a Super One Foods, #601, Respondent.**

No. 90–4071.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1990.

John Fawley, Aileen A. Armstrong, Deputy Associate Gen. Counsel, N.L.R.B., Laurence S. Zakson, Barbara A. Atkin, Washington, D.C., H. Frank Malone, Director,

Region 15, N.L.R.B., New Orleans, La., for petitioner.

Stephen W. Smith, David M. Thomas, Fulbright & Jaworski, Houston, Tex., for respondent.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Respondent Brookshire Grocery Company (Brookshire) promulgated a workplace rule forbidding the discussion of confidential wage information among its employees. Brookshire then suspended an employee for copying confidential wage information from his supervisor's files and distributing the information to his fellow employees. The administrative law judge (ALJ) found that in promulgating its rule Brookshire was guilty of an unfair labor practice, in violation of section 8(a)(1) of the National Labor Relations Act (the Act), but the ALJ concluded that Brookshire did not violate the Act by dismissing the employee who had copied the confidential wage information. Both the General Counsel and Brookshire filed exceptions to the ALJ's determination.

The National Labor Relations Board (the Board) agreed that Brookshire had violated section 8(a)(1) by promulgating its rule but reversed the ALJ's remaining findings, concluding that Brookshire had violated the Act by discharging an employee pursuant to its invalid workplace rule. The Board also determined that Brookshire had coercively interrogated its employees concerning their discussion of wages. The Board thus issued an unfair labor practice order directing Brookshire to reinstate the employee with back pay and to post remedial notices concerning its violations. *Brookshire Grocery Co.*, 294 N.L.R.B. No. 34.

The Board now seeks from this court an order enforcing its decision. We grant the petition in part and deny it in part.

I.

The parties basically agree on the facts. Brookshire held a general meeting during which it announced that it would increase general wages and notify employees of the amount during one-on-one meetings. Mark Moise was a meat market clerk who several times a day had to go into the office of his supervisor, Gordon Cole, during the course of his work. Moise entered that office shortly after midnight on the day following the meeting. Inside he came across the evaluations of seven or eight fellow employees.

At his hearing, Moise admitted that he knew this information to be confidential; nevertheless, he copied the evaluations and wage-increase information for his own use. At the time, Brookshire had in force a workplace rule that made possessing or disseminating confidential wage information a ground for discharge.

Later that morning, Moise individually approached three of his fellow employees and shared the wage information with them. At least one of the employees was theretofore unfamiliar even with the amount of his own raise. The third employee whom Moise approached went to Cole the next day and reported that Moise had the list of wages.

After discussing the matter with the other employees involved, Cole decided to confront Moise. When asked about the list of wage increases, Moise denied any knowledge concerning it. After discussing the matter with store director Santone and district meat supervisor Jones, Cole recommended that Jones terminate Moise.

Two days later, Cole and Santone met with Moise and again asked him where he had gotten the list. Moise this time replied that he had gotten it from another employee whom he would not identify. Moise admitted during his hearing that he had lied about this in an attempt to protect his job.

Cole then advised Moise that he was being fired not for stealing the information—at this time Cole had no solid evidence of this—but for revealing confidential wage information to other employees.

Santone testified without contradiction that he would have terminated Moise for this reason also, had he had adequate proof that Moise illicitly had taken the information from Cole's desk.

Moise filed a claim for unemployment benefits in Louisiana. Brookshire contested the claim, stating that Moise was discharged for misconduct and for revealing confidential information to three other employees. Although Moise testified falsely under oath that he had obtained the pay raise information from someone else, the appeals referee denied the claim, finding that Moise was discharged because he had disobeyed Brookshire's instructions by divulging confidential information about pay raises to other employees.

Moise also filed an unfair labor practice charge with the Board, alleging that Brookshire had promulgated an illegal rule prohibiting employees from discussing wage rates, had interrogated employees about protected activities, and had discharged Moise for engaging in protected activities. The ALJ found that Brookshire's rule prohibiting the discussion of wage rates did indeed violate section 8(a)(1) of the Act, but ruled that Brookshire's discharge of Moise was lawful.

The ALJ found that Moise was discharged because he showed other employees confidential information improperly obtained from Brookshire's files and that this activity was not protected under the Act. The ALJ also found that Brookshire did not unlawfully interrogate employees concerning protected activities. The ALJ, however, refused to give Brookshire Moise's affidavit, stating that section 102.118 of the Board's Statements of Procedure requires production only of those Board affidavits given by witnesses specifically called by the Board. Moise had been called by Brookshire as an adverse witness.

After reviewing the parties' exceptions, the Board, over a dissent, reversed the ALJ's findings in favor of Brookshire and instead found for Moise on all counts.[1]

The Board ordered Brookshire to cease its unfair labor practices, to reimburse Moise for pay lost after he was fired, and to reinstate Moise to his former or a substantially equivalent position with a clean record.

## II.

Section 7 of the Act, 29 U.S.C. § 157 (1988), guarantees employees the right to engage in "concerted activities for the purpose of collective bargaining or other mutual aid or protection." Section 8(a)(1) makes it an unfair labor practice for an employer to interfere with section 7 rights. *Id.* § 158(a)(1). Concerted activities include matters of common concern, *see NLRB v. Washington Aluminum Co.,* 370 U.S. 9, 17, 82 S.Ct. 1099, 1104, 8 L.Ed.2d 298 (1962), which includes the right to discuss wages. *D & D Distrib. Co. v. NLRB,* 801 F.2d 636, 639–40 (3d Cir.1986).

In this case, the Board found that Moise was fired pursuant to an unlawful rule prohibiting the discussion of confidential wage information. This determination must be upheld if it is supported by substantial evidence in the record considered as a whole, not just evidence supporting the Board's findings. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 485, 71 S.Ct. 456, 463, 95 L.Ed. 456 (1951).

The substantial evidence standard is used even where the ALJ and the Board have come to different conclusions. *Merchants Truck Line, Inc. v. NLRB,* 577 F.2d 1011, 1014 (5th Cir.1978). However, "[w]hen the ... Board does not accept the findings of the [ALJ], the Court of Appeals has an obligation to examine the evidence and findings of the Board more critically than it would if the Board and the ALJ were in agreement." *NLRB v. Florida Medical Center, Inc.,* 576 F.2d 666, 674 (5th Cir.1978) (citing *NLRB v. Tom Johnson, Inc.,* 378 F.2d 342 (9th Cir.1967)).

As we have observed, " '[o]nly in the most rare and unusual cases will an appel-

---

1. Chairman Stephens dissented on the ground that Brookshire should have been given the opportunity to demonstrate that reinstatement and back pay were inappropriate remedies, considering misconduct discovered by Brookshire subsequent to Moise's discharge.

late court conclude that a finding of fact made by the ... Board is not supported by substantial evidence.'" *Merchants Truck Line*, 577 F.2d at 1014 n. 3 (*quoting Ward v. NLRB*, 462 F.2d 8, 9 (5th Cir.1972)). However, we have not hesitated to overturn Board findings for employees where an employee is fired for asserted cause with "direct evidence of justification for the discharge," *id.*, or "where the NLRB rejects an [ALJ's] credibility findings without justification." *Id.*

■ Brookshire promulgated a workplace rule that forbade the discussion of confidential wage information between employees. This rule patently violated section 8(a)(1).[2] At issue here is how that violation affects dismissals made by Brookshire while the rule still was in force.

■ The Board contends that Moise was dismissed primarily for violating the invalid rule. In support of this position, the Board cites both an affidavit by Cole, in which he states that the decision to terminate Moise was based upon Moise's discussion of the wage information, and similar hearing testimony by Santone. The Board argues that these statements offer substantial evidence to support the Board's findings and that even if they do not, a discharge for violating a rule cannot be sustained where the rule is invalid on its face. *See Jeannette Corp. v. NLRB*, 532 F.2d 916, 918 (3d Cir. 1976).

While we award considerable deference to the Board's findings, the Board cannot determine that Brookshire violated the Act unless Moise was engaged in a protected activity. Absent this, the Board's findings cannot stand, even under the lenient substantial evidence test. *Florida Medical Center*, 576 F.2d at 672.

Quite simply, wrongfully obtaining information from a company's private files is not a protected activity. *See, e.g., NLRB v. Clearwater Finishing Co.*, 203 F.2d 938 (4th Cir.1953); *International Business Machs. Corp.*, 265 N.L.R.B. 638 (1982);

*W.R. Grace Co.*, 240 N.L.R.B. 813 (1979). "While section 7 guarantees an employee the right to use information available in the normal course of work activity and association, it does not extend to the unauthorized dissemination of information obtained from an employer's confidential files or records." *NLRB v. Florida Steel Corp.*, 544 F.2d 896, 897 (5th Cir.1977) (citations omitted). As Moise was not engaged in behavior protected under the Act, he is not entitled to its benefits.

■ The Board's position that Moise was discharged for his discussion of wages, and not for how he initially got the information, suffers from two infirmities. First, the Act indulges the presumption that a discharge was lawful until proven otherwise, and the burden is on the General Counsel to show that the discharged employee was engaged in a protected activity. *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21, 23 n. 3, 85 S.Ct. 171, 172 n. 3, 13 L.Ed.2d 1 (1964). Thus, where an employee is fired for taking confidential wage information from a company, the case should be dismissed unless the General Counsel discharges his burden of showing that the employee "was not involved in any respect in surreptitiously obtaining the confidential salary and raise information from Respondent's files." *W.R. Grace Co.*, 240 N.L.R.B. at 820–21.

Second, the Board ignores the fact that in earlier cases it has looked beyond the company's asserted reasons to evaluate all circumstances involved in the firing. For example, in *Bullock's*, 251 N.L.R.B. 425 (1980) (supplemental decision and order), an employee was fired in the main for disseminating confidential personal reviews of seven or eight associates. At the time, she refused to say where she had gotten the information, so the company dismissed her for "discussing personal job reviews with other associates." *Id.* at 425.

The Board initially determined that if the employee had come upon the reviews innocently, then she was engaged in a protected

2. Brookshire does not contest that this rule violated § 8(a)(1). Brookshire therefore waives this argument on review, and this portion of the Board order is entitled to summary affirmance.

*NLRB v. Jacob E. Decker & Sons*, 569 F.2d 357, 360 (5th Cir.1978). Brookshire is directed to post notice to the effect that the prior rule was invalid and has been rescinded.

activity, but that if she "had *wrongfully* obtained and copied the reviews herself, her activities would not be protected by the Act and her discharge for engaging in such misconduct would not be unlawful." *Id.* at 258. (emphasis added). After remand, the ALJ specifically found that *"Barton was discharged as a result of having wrongfully obtained and copied confidential performance reviews,* and divulging their contents to other employees, and for otherwise unjustifiably causing the demoralization of . . . personnel." *Id.* at 426 (emphasis added). The emphasized findings were not advanced by the company and were based upon information gathered by the ALJ after remand, long after the employee's discharge.[3]

In the instant case, the Board fails to follow this practice and confines itself to Brookshire's stated reasons for discharging Moise. Because "a departure from past agency precedents requires at least a reasoned explanation of why this is done," *Fiber Glass Sys., Inc. v. NLRB,* 807 F.2d 461, 464 (5th Cir.1987), the Board's failure, in its order, even to cite to, let alone consider, its prior decisions taking the opposite tack is worthy of note. *See id.*

Even though Brookshire's statements of why it fired Moise could be construed as resting solely upon its invalid rule prohibiting discussion, this court, in deciding whether substantial evidence supports the Board's decision, can consider more than the company's statements. Because we must examine the evidence both supporting

and opposing the Board's decision, *Universal Camera,* 340 U.S. at 485, 71 S.Ct. at 463, we must take note of Moise's admission that he took information that he knew to be confidential.

Moise's right to discuss the information may have been protected under the Act, but this does not help him; as the ALJ in *W.R. Grace* stated, "even if the information as to current salaries could have been obtained through legitimate sources, *e.g.,* other employees, an employee's surreptitious resort to the employer's files for such information would not be protected under the Act." 240 N.L.R.B. at 820.[4] An employee must be engaged in protected activities before he can receive the Act's protections, and the burden is on the Board to establish this. *Burnup & Sims,* 379 U.S. at 23, 85 S.Ct. at 172–73. The Board thus acted incorrectly in reversing the findings of the ALJ.

### III.

 Furthermore, even assuming that Moise was engaged in protected activity, he forfeited his remedial rights by taking confidential company information and lying under oath about the source of his information. We have held that where "the purposes and policies of the Act would not be effectuated by reinstatement" or other remedial measures, then denial of the traditional remedies accorded under the Act is proper.[5] This is particularly true where

---

**3.** *Accord Roadway Express, Inc.,* 271 N.L.R.B. 1238 (1984) ("An employer . . . has a right to expect its employees not to go into its files and to take its business records for whatever purposes they wish, and it is not unreasonable for an employer to consider such conduct as justifying discipline.").

**4.** *Accord Roadway Express,* 271 N.L.R.B. at 1239 ("Thus it is clear that [the employee] surreptitiously resorted to the Respondent's business records for information. Such conduct is not protected under the Act.").

**5.** *NLRB v. Big Three Welding Equip. Co.,* 359 F.2d 77, 84 (5th Cir.1966); *accord Iowa Beef Packers, Inc. v. NLRB,* 331 F.2d 176, 185 (8th Cir.1964). There is some Fifth Circuit precedent that suggests that when the remedy is back pay, the Board is given wider latitude to effect

the purposes of the Act. As we held in *NLRB v. Laredo Packing Co.,* 730 F.2d 405, 407 (5th Cir. 1984), "when the Board orders restoration by way of back pay, the order will not be disturbed absent a showing that the order is an obvious attempt to further ends other than those which can be fairly said to effectuate the policies of the Act." *Id.* Although this distinction is not explicitly developed, it would be in accord with other Fifth Circuit pronouncements that express reluctance to maintain an employment relationship against the parties' wishes. *See, e.g., Big Three Welding,* 359 F.2d at 84. Because Moise was not engaged in the protected activity necessary for entitlement to either remedy, the two issues need not be discussed separately. We thus do not decide whether the standard of review is different where the Board has ordered reinstatement as a remedial measure.

remedial measures could be construed as an invitation to continue the misconduct on the part of the fired employee or others. *Big Three Welding*, 359 F.2d at 84.

Courts often deny reinstatement and back pay even where a company has violated the Act. For example, in *NLRB v. Big Three Indus. Gas & Equip. Co.*, 405 F.2d 1140 (5th Cir.1969), an employee was denied reinstatement as a truck driver because he had violated the traffic laws by receiving four tickets. Similarly, in *NLRB v. Magnusen*, 523 F.2d 643 (9th Cir.1975) (per curiam), the court denied recovery to an employee who was discharged in violation of section 8(a)(3) but who admitted that he earlier had lied during a Board hearing concerning the time reported on his time card. Finally, the court held in *Iowa Beef Packers*, held that it would not reinstate an employee or give him back pay, despite the Board's urging, where he had given false testimony at an earlier hearing. 331 F.2d 176.

Although this circuit has not squarely confronted the deprivation of a remedy in a situation in which a party either has lied at a hearing or taken confidential information, previous Board decisions make it clear that reinstatement is not proper in these circumstances. For example, in *Uniform Rental Serv., Inc.*, 161 N.L.R.B. 187 (1966), *enforcement denied on other grounds*, 398 F.2d 812 (6th Cir.1968), the Board confronted a similar situation in which an employee had taken confidential information from a supervisor's desk and used it for his own ends. The Board held for the company, noting that "[t]he question is simply whether or not an employee who improperly enters her employer's private office and pilfers a letter has forfeited her right to back pay and reinstatement in the circumstances of the case. We think she has." *Id.* The Board similarly has denied reinstatement for a violation of the Act where an employee has lied to collect unemployment com-

pensation. *Vilter Mfg. Corp.*, 271 N.L.R.B. 1544 (1988).

■ We now adopt this position. An employee's right to discuss wage levels freely within the workplace does not, and should not, extend to that employee the prerogative of taking company papers and does not encompass the right to copy confidential information. To take a position to the contrary would elevate pilferage to the status of a protected activity. This was not the intent of the Act, and we do not read such a provision into the Act today. We adopt the reasoning of previous Board decisions that respect the right of a company to protect its private information by discharging employees who abuse positions of trust and take information that they know is rightfully off-limits.

In this case, it is fairly evident that Brookshire knew that Moise had obtained confidential information that was not intended for him to see. The only source of the information, after all, was the company's files, for at that time some of the employees were unaware of even their own planned salary increases.

Our position, however, would be the same even if we assumed that the sole reason Moise initially was fired was for discussing wages in violation of an admittedly invalid workplace rule. Although reinstatement normally would be the proper remedy under these circumstances, it simply is inappropriate to require a company to rehire a worker who took information from his supervisor in the middle of the night, *see Big Three Welding*, 359 F.2d at 84, or who lied to the state in an attempt to gain unemployment benefits at the state's and company's expense, *see Vilter Mfg. Corp.*, 271 N.L.R.B. 1544. Neither reinstatement nor back pay is appropriate in this instance.[6]

The Board cites *NLRB v. Roney Plaza Apartments*, 597 F.2d 1046, 1050–51 (5th Cir.1979), as a case awarding reinstatement following an employee's false statements. What the Board fails to note, however, is

---

6. We also note that as a result of the Board's delay, several years have passed since Brookshire fired Moise. Back pay under these cir-

cumstances is particularly inequitable, as the back pay tally has been increasing steadily through no fault of Brookshire's.

that in *Roney* we found that the employee's false denials were "inextricably involved" with other coercive interrogations. *Id.* at 1051. Where an employee lies under oath to protect his job in the face of an invalid workplace rule, he is less culpable than where he lies at a state hearing to collect unemployment benefits or takes information from his supervisor's office. *Compare id.* at 1050–51 *with Vilter Mfg. Corp.*

Similarly, the Board's argument that Moise's misconduct was not severe enough to merit denying him his old job is not persuasive. While the Board correctly notes that "sufficiently serious" misconduct must occur to deprive an employee of an otherwise proper remedy, this is not all that high a hurdle. Witness the truck driver in *Big Three Industrial Gas & Equipment* who lost his right to reinstatement because he had garnered four traffic tickets.

■ In sum, we indulge both a presumption that an employer has acted correctly in firing an employee and a reluctance to force reinstatement where to do so would condone behavior that a reasonable employer would not wish in its workplace. Thus, by his own actions Moise thus forfeited his right to remedial measures, even assuming that he was due any.[7]

### IV.

■ Brookshire also contests the finding of the Board that it engaged in coercive interrogation of its employees.[8] The Board is required to apply the *Bourne* test, which has been adopted by this circuit.

*See Bourne v. NLRB*, 332 F.2d 47 (2d Cir.1964); *NLRB v. Brookwood Furniture*, 701 F.2d 452, 460–61 (5th Cir.1983) (applying *Bourne* factors). In applying this test, it is not necessary for the Board to produce an actual employee who was coerced; rather, " '[t]he test for determining whether an employer has violated § 8(a)(1) is whether the employer's questions, threats, or statements tend to be coercive, not whether the employees are in fact coerced.' " *Id.* at 459 (quoting *TRW–United Greenfield Div. v. NLRB*, 637 F.2d 410, 415 (5th Cir. Feb. 1981)).

■ The eight *Bourne* factors used to determine coercion are (1) the history of the employer's attitude toward its employees; (2) the nature of the information sought or related; (3) the rank of the questioner in the employer's hierarchy; (4) the place and manner of the conversation; (5) the truthfulness of the employee's response; (6) whether the employer had a valid purpose in obtaining the information sought; (7) whether a valid purpose, if existent, was communicated to the employee; and (8) whether the employer assured the employee that no reprisals would be forthcoming. *Id.* at 460–61. This court on occasion also will look to factors not included in the test. *See Centre Property Mgm't v. NLRB*, 807 F.2d 1264, 1271 n. 4 (5th Cir.1987).

As an initial matter, the Board makes review of its decision in this case difficult by omitting the most important clue: the questions and answers themselves. The very conversations that allegedly are coercive are absent from the record. Without the contents of the questions and answers,

**7.** Brookshire also contends that the Board's refusal to produce Moise's affidavit at trial violated its right to due process of law. This issue does not affect the outcome and we thus decline to decide it. Although Brookshire contends that the issue is important because the affidavit might prove that Moise got his information from inside Cole's desk, rather than coming across it in plain sight, it is evident that the Board did not rely heavily upon this when it found Brookshire to have violated the Act. As shown above, the analysis does not change depending upon whether Moise found the materials inside or outside the desk. Because Brookshire fails to present any other reason why the

evidence is significant, the Board's refusal to produce the affidavit does not violate Brookshire's due process rights, as it does not harm it in any way.

**8.** Brookshire's contentions that the Board failed to present substantial evidence to support its findings of coercive interrogations misconstrues the substantial evidence test. Substantial evidence does not mean direct evidence; the Board properly could consider the timing of the interviews and could draw plausible inferences from the evidence. *See TRW, Inc. v. NLRB*, 654 F.2d 307, 310 (5th Cir. Unit A Aug. 1981).

it is difficult for the Board or this court to tell whether the questioning was coercive. The ALJ for this very reason refused to find that Brookshire had engaged in coercive interrogation.

This is not the first time that we have confronted a similar failure of the Board to apply the *Bourne* factors. In *Fiber Glass Systems* we refused to review a finding of the Board that coercive interrogation had occurred, because the Board did not present an adequate record to allow meaningful review. We noted that "[a]lthough this court has repeatedly directed the NLRB to apply the *Bourne* factors, the Board has shown continued reluctance to set forth its legal bases for finding employer questioning coercive or threatening under section 8(a)(1)." 807 F.2d at 463 (citing numerous cases).

 Although the Board in the instant case does present a reason for its finding—that the interviews took place very soon after the meeting on the discussion of wage levels—it fails to provide us with any indication of how it applied the *Bourne* factors,[9] a failure that we previously have characterized as a "refusal to adhere to our guiding precedent." *Id.* In the future, the Board should take the time to establish the facts that make questioning coercive and specifically should apply the *Bourne* factors to those facts before passing judgment.

 In this case, however, we conclude that there is enough evidence in the record to conclude that Brookshire engaged in coercive interrogation—a conclusion unnecessarily made more difficult by the Board's failure to develop in the record the actual contents of the questions Brookshire asked of its employees. We can sustain an order, even if it lacks an essential finding, where the record supports the existence of the omitted finding. *See Brookwood Furniture*, 701 F.2d at 461 n. 23.

 In making a determination of coercive interrogation, we consider the totality of the circumstances. *Id.* at 460. Brookshire's questioning took place in an atmosphere that it had poisoned with an invalid wage discussion rule. Brookshire repeatedly and pointedly had warned its employees that discussion of wage levels would result in termination. Immediately after its latest meeting in which it admonished its employees against discussing wages, Cole and Santone began to question Brookshire's employees on the subject and to ask them specific questions about Moise's role in revealing wages. Given the employees' knowledge that the whole subject was taboo, the employees, when questioned by their supervisors, were presented with a coercive situation.

This conclusion is only reinforced by fitting the above facts into the eight-factor *Bourne* analysis. Brookshire had a long history of attempting to prevent its employees from discussing wages, which violated the first *Bourne* factor. When Santone and Cole questioned employees concerning their wage discussions with Moise, this violated the second and third *Bourne* factors.

Furthermore, while the actual conversations are not in the record, it seems obvious from the timing of the interviews that any employee interviewed would have feared reprisals for discussing wages, as the questions followed on the heels of Brookshire's meeting stressing to employees that any discussion of wages was ground for dismissal. Considering that Brookshire was seeking to establish a violation of an illegitimate rule, it had no valid purpose in interviewing its employees about their wage discussions. Brookshire thus also violated the last three *Bourne* factors.

While it is true that Brookshire was conducting the interviews on its own premises and that its employees answered the questions truthfully, it does appear that there was substantial evidence to support the

---

**9.** Although the Board applies the *Bourne* factors in its *brief*, these "post-hoc rationalizations" are factors that we cannot consider on review. The Board's order can be sustained only on the grounds articulated therein. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962).

Board's finding that Brookshire had coercively interrogated its employees, even though factors four and five of the *Bourne* test were not satisfied. It is not necessary for the Board to prove that every *Bourne* factor is satisfied. *See Sturgis Newport Bus. Forms, Inc. v. NLRB*, 563 F.2d 1252, 1256 (5th Cir.1977). Rather, all the substantial evidence test requires is that the Board show a reasonable basis for its findings of fact and inferences drawn from them. *Id.* Although we might decide this issue differently were we confronted with it on de novo review, in this case the Board has provided sufficient evidence to justify its holding that Brookshire coercively interrogated its employees.[10]

### V.

Because Moise was not engaged in a protected activity when he obtained and copied confidential information, we DENY enforcement of the Board's award of back pay and reinstatement. Because Brookshire violated section 8(a)(1) by promulgating a prohibited workplace rule, however, and engaged in coercive interrogation of its employees, those portions of the Board's order requiring the posting of remedial notices alerting employees that the illegitimate rule has been rescinded are ENFORCED. So ordered.

ALVIN B. RUBIN, Circuit Judge, specially concurring:

For the reasons stated in part III of the opinion, I concur. I do not think that the cases previously decided by the Board, *Bullock's*,[1] *Roadway Express, Inc.*,[2] and *W.R. Grace Co.*,[3] resolve the issue whether the ALJ and the Board can consider information beyond that originally known to and cited by the employer in deciding whether the employee was or was not discharged for engaging in an unprotected activity. I

therefore would not decide that issue until the Board has itself directly considered it.

---

**10.** *See TRW, Inc.*, 654 F.2d at 310 ("Recognizing the Board's expertise in labor law, we will defer to plausible inferences it draws from the evidence, even if we might reach a contrary result were we deciding the case de novo.").

**1.** 251 N.L.R.B. 425 (1980) (supplemental decision and order).

